**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **16-04686-jw**

### Order On Motion to Compel Turnover

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**09/13/2021**



Entered: 09/13/2021

*John E Waites*

US Bankruptcy Judge
District of South Carolina

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br>Shepard Carl Roberts, Sr. and Vonnie Cook Roberts,<br>Debtors. | C/A No. 16-04686-JW<br><br>ORDER ON MOTION TO COMPEL TURNOVER |

This matter comes before the Court upon the Chapter 13 Trustee's Motion to Compel Turnover of Funds ("Motion") filed on June 29, 2021, which sought a turnover of $5,613.70 of funds disbursed by the Trustee to Titan Leasing, LLC ("Titan"). Titan filed an objection to the Motion, and a hearing was held on the matter where the Court took the matter under advisement. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This matter is a "core" proceeding under 28 U.S.C. § 157(b)(2). Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1. On June 3, 2016, Shepard Carl Roberts, Sr. entered a rental purchase agreement ("Agreement") with Titan for a storage shed. The Agreement provided that Mr. Roberts would have possession of the storage shed in exchange for him making monthly payments of $144.14 for forty-eight months, and that upon the completion of the payments, Mr. Roberts would become the owner of the storage shed.

2. On September 16, 2016, Mr. Roberts and Vonnie Cook Roberts ("Debtors") filed a petition for relief under chapter 13 of the Bankruptcy Code.

---

[1] To the extent that the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

3. Also on September 16, 2016, Debtors filed a proposed chapter 13 plan, which provided the following treatment of Titan's claim:

> D. <u>Assumption or Rejection of Executory Contract/Unexpired Lease</u>: The debtor moves for the assumption of the following executory contract and/or unexpired lease. The debtor agrees to abide by all terms of the agreement and to cure any pre-petition arrearage or default in the manner below. Any executory contract or unexpired lease not specifically mentioned is rejected.

| Name of Creditor and lease or contract to be assumed | Amount of regular payment | Estimated amount of Default (state if none) | Cure Provisions for any default paid by (Debtor or Trustee) | Regular payments to be paid by Debtor directly to creditor beginning (month/year) |
|---|---|---|---|---|
| **Titan Leasing, LLC** | **$144.14** | **$288.28** | **$288.28 to be paid by the trustee** | **Regular payments to be paid by Debtor directly to creditor beginning October 2016** |

4. On October 28, 2016, Debtors filed a proposed amended chapter 13 plan, which did not modify the treatment of Titan's claim. Titan did not file an objection to the confirmation of the plans filed on September 16, 2016 or October 28, 2016.

5. On December 1, 2016, the Court entered an Order Confirming the amended plan filed on October 28, 2016. No party filed an appeal of the Court's Confirmation Order.

6. On December 5, 2016, Titan filed a proof of claim. The proof of claim indicated that Titan had an unsecured claim based on the Agreement with the amount necessary to cure the prepetition default as $297.70 and that the total amount of its claim under the Agreement as $6,639.72.

7. Through an error, the Chapter 13 Trustee's office incorrectly coded Titan to be paid the full amount of its claim ($6,639.72) through the Trustee's disbursements under the confirmed plan instead of the $297.70 amount needed to cure the pre-petition default on the Agreement as stated in the confirmed plan. Ultimately, the Trustee's office would disburse a total of $5,911.40 from payments under the

2

confirmed plan to Titan before the error was discovered, which was a payment of $5,613.70 more than what was provided under the terms of the confirmed plan.

8. While Debtors made some direct post-petition payments to Titan under the confirmed plan, Debtors ceased making the direct payments to Titan in February 2018. In total, Debtors paid $1,922.46 in direct post-petition payments to Titan.

9. According to the payment ledger attached to Titan's response to the Motion, through the combination of direct payments from Debtors and the disbursements from the Trustee, the Agreement was paid in full on June 25, 2020. Despite its internal records treating the Agreement as being paid in full and without notice to the Trustee, Titan continued to accept disbursements from the Chapter 13 Trustee from July 2020 until May 2021 when the Trustee's Office ceased disbursements to Titan due to the discovery of the error. In total, Titan accepted $1,235.86 in trustee disbursements after Titan considered the Agreement paid in full.

10. On June 29, 2021, the Chapter 13 Trustee filed the present Motion seeking the Court to enter an order compelling Titan to turnover $5,613.70, which the Trustee asserts is the amount overpaid by trustee disbursements to Titan under the terms of the confirmed plan. The Trustee asserts that turnover is proper under the terms of the confirmed plan as well as equitable under South Carolina law. The Trustee asserts that funds disbursed in error to Titan were intended to be disbursed on a pro rata basis to allowed general unsecured creditors.

11. On July 12, 2021, Titan objected to the Motion asserting that it would be inequitable to require the turnover of the funds as a result of the error, alleging that the error prevented it from filing for relief from the automatic stay, as well as alleging that its claim to post-petition payments under the Agreement gave those post-petition payments priority over the claims of Debtors' general unsecured creditors.

12. At a hearing on the Motion, the parties stipulated to the admission of five exhibits: (1) a copy of the confirmed chapter 13 plan, (2) a copy of Titan's proof of claim, (3) a copy of the Agreement, (4) a copy of the Trustee's ledger for disbursements made to Titan, and (5) a copy of Titan's payment history with indications noting which payments were received from direct payments of Debtors and which were disbursements from the Trustee.

## CONCLUSIONS OF LAW

The issue before the Court is whether the Trustee is entitled to a turnover from Titan of the incorrectly disbursed funds in the amount of $5,613.70. The Trustee asserts that a turnover is proper pursuant to applicable bankruptcy law under the terms of the confirmed plan and the Court's inherent authority under 11 U.S.C. §§ 105 and 502(j), as well as under the equitable principles of South Carolina law.[2] The Court will address each of these arguments.

### A. Turnover Is Proper Under Applicable Bankruptcy Law

As an initial note, the Trustee has the implicit authority under the Bankruptcy Code to recover overpayments made to a creditor. *See* 11 U.S.C. 502(j) (2021) (providing that "this subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor"); *Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 477 (Bankr. E.D. Tenn. 2002) ("It is clear from [§502(j)] that a trustee's authority to recover overpayments from a creditor is implied or contemplated by the Bankruptcy Code notwithstanding the absence of a specific Bankruptcy Code provision expressly granting such authority."); *Vieira v. AGM II, LLC and Lancelot Investor Fund, L.P. d/b/a Surge Capital (In re Worldwide Wholesale Lumber, Inc.)*, Adv. Pro. No. 07-80008-jw, C/A No. 06-01499-jw, slip op. at 17 (Bankr. D.S.C. May 21, 2007) (noting that a bankruptcy trustee may recoup an overpayment to a creditor (citing 11 U.S.C. § 502(j)).

---

[2] Further reference to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

This Court recently addressed a request for a creditor's disgorgement of an overpayment under the terms of a confirmed plan in *In re Alston*, 610 B.R. 551 (Bankr. D.S.C. 2019). In *Alston*, the confirmed plan provided that the creditor's claim would be paid in full through disbursements by the trustee; however, the debtor paid the creditors claim in full satisfaction during a period when the debtor's case was briefly dismissed before being reinstated upon the debtor's request. *Id.* At 553. Without notice or knowledge of the full payment to the creditor by the debtor during the short period when the case was dismissed, the Trustee continued to make disbursements to the creditor during the course of the debtor's case under the terms of the confirmed plan. *Id.* Ultimately, the creditor received the full payment of the claim twice, once from the debtor and once from the trustee disbursements. *Id.* The Court in *Alston* held that accepting and retaining the overpayment was a violation of the plan and the confirmation order and required the creditor to return the overpayment pursuant to § 105. *Id.* at 554. Section 105(a) provides that:

> The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.] No provision of [the Bankruptcy Code] providing the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Further, the Court notes that upon the confirmation of Debtors' plan, Debtors, Titan and all other of Debtors' creditors became bound to the terms of the plan and the plan had the res judicata effect of a final judgment. *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."); *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015) ("[Section 1327(a) gives plan confirmation the res judicata effect of a final judgment.").

In the present matter, the terms of Debtors' confirmed plan clearly established the precise amount that Titan was to receive from disbursements of the Trustee—the amounts necessary to cure the prepetition

5

default on the Agreement, which Titan's proof of claim established as totaling $297.70. Titan is bound by the terms of that plan, and Titan's receipt of trustee disbursements above this amount violates its terms and the Court's confirmation order, causing a diminution of the dividend for allowed unsecured creditors that was intended to those creditors under the plan. Considering the clear language of the plan and the limited amounts to be disbursed to Titan by the Trustee, return of the overpaid funds is even more compelling in the present matter than the facts in *Alston*. Continued retention of this overpayment by Titan is a violation of the terms of the confirmed plan requiring disgorgement and turnover of those funds to the Trustee pursuant to both § 521(j) and the Court's inherent authority to enforce its orders and the Bankruptcy Code under § 105(a) to ensure the disbursements are consistent with the terms of the plan. For these reasons, the Court finds under applicable bankruptcy law, that the Trustee's Motion should be granted.

**B. Turnover is Proper under South Carolina Law**

While the Court finds that applicable bankruptcy law requires the turnover of the overpayment disbursed to Titan by the Trustee, the Court also recognizes that turnover is proper under South Carolina law.

Under South Carolina law, actions to recover money paid by mistake are governed by equitable principles, with the usual test being whether the party receiving the overpayment is entitled to the retain the funds in equity and good conscience. *See Town of Bennettsville v. Bledsoe*, 84 S.E.2d 554, 556 (S.C. 1954) ("The action is at law for money had and received but it is well-settled that equitable principles govern. . . . [The recipient] is not entitled to [the overpayment] in equity and good conscience, which is the usual test in such cases."). Therefore, in such situations, courts must balance the recipient's unjust enrichment at the payor's expense with the equities or prejudice that would result to the recipient upon returning the funds, including any irrevocable change of position that has occurred to the recipient as a

6

result of the mistaken payment. *See id.* Even when an irrevocable change of position has occurred, the party receiving the money must be "entirely free and innocent of mistake." *Id.* In other words, under all circumstances, the Court must balance the equities of the parties to determine if a return of the overpayment is equitable and appropriate. This is true even if the overpayment was the result of payor's negligence, carelessness or through a clerical error, and such conduct will not prevent a recovery by the payor of the overpaid funds. *McDonald's Corp. v. Moore*, 237 F. Supp. 874, 878 (W.D.S.C. 1965) (applying S.C. Law) ("[I]f a benefit is bestowed through mistake, no matter how careless or inexcusable the act of the bestower may have been, the recipient of the benefit must make restoration, the theory being the restitution results in no loss to the recipient. He merely received something for nothing." (internal quotations omitted)).

In the present matter, the Court finds the equities compel a turnover of the overpayment from Titan to the Trustee. First, Debtors' failure to provide timely payments to Titan as required by their confirmed plan may preclude their ability to secure a discharge in their chapter 13 case because they have not fulfilled all the payment obligations mandated by their confirmed plan, and therefore, it appears the debtors may remain liable to Titan for any unpaid amounts provided for in the confirmed plan.[3] *See In re Dowey*, 580 B.R. 168, 173–74 (Bankr. D.S.C. 2017) (finding payments made directly to a creditor by a debtor were "payments under the plan" for discharge purposes when the chapter 13 plan provided for a cure of a pre-petition default through trustee disbursements and maintenance of ongoing post-petition payments though direct payments by the debtor). Moreover, Titan may still pursue relief from stay to repossess the storage shed that Debtors are leasing from Titan through the filing of a motion for relief from stay under § 362(d). To this end, Titan is not without a remedy to collect amounts due on its claim given Debtors' default.

---

[3] As Debtors were not parties to the Motion, the Court is not making a final determination of whether Debtors are entitled to a discharge under § 1328(a) at this time and will reserve such determinations for the conclusion of Debtors' case.

Second, Titan's payment history reflects that it knew or should have known that it was receiving double payments from Debtors and the Trustee for some period, which led to Titan receiving more than the set amount to be paid under the plan from the Trustee's disbursements. In addition, Titan should have been aware that it was receiving more than the amount set in the plan when it continued to receive disbursements from the Trustee for almost a year after it had treated the Agreement as paid in full. In the absence of any steps taken by Titan to address this issue earlier in the case, the equities of the do not support Titan's postion. The Court finds these equities outweigh any prejudice asserted by Titan resulting from any delay in its filing of a motion for relief from stay in Debtors' case, especially as Titan still has a remedy to collect the amounts due for Debtors' default at this time.[4]

For these reasons, the Court finds that equity and good conscience require Titan to return the overpaid funds to the Trustee. Therefore, the Trustee's Motion should also be granted under South Carolina law.

## **CONCLUSION**

For the foregoing reasons, the Trustee's Motion to Compel Turnover of Funds is granted. Titan is hereby directed to return to the Trustee the overpayment of trustee disbursements made to Titan that were inconsistent with the terms of the confirmed chapter 13 plan in the amount of $5,613.70. Titan shall turnover such funds to the Trustee by no later than twenty-one (21) days after the entry of this Order.

**AND IT IS SO ORDERED.**

---

[4] Titan also requested that the Court disregard the terms of the confirmed chapter 13 plan and allow it to retain the overpayment on the grounds that Titan's Agreement has priority over the allowed general unsecured creditors. Titan did not provide any authority to support that it has priority over such creditors, and the Court is not inclined to disregard the binding effect of the confirmed plan and its terms.

8